IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYNCHVIEW TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ATLANTIC BROADBAND FINANCE, LLC,<br><br>Defendant. | CIVIL ACTION FILE<br><br>NO. ____________________<br><br>**Jury Trial Demanded** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff SynchView Technologies, LLC ("SynchView" or "Plaintiff") files this Complaint for Patent Infringement against Defendant Atlantic Broadband Finance, LLC ("Atlantic Broadband" or "Defendant"), and states as follows:

## THE PARTIES

1. Plaintiff is a limited liability company organized and existing under the laws of the State of Georgia, having its principal office at 3930 E. Jones Bridge Road, Suite 140, Peachtree Corners, GA 30092.

2. Defendant is a Delaware corporation with a principal office at 2 Batterymarch Park, Suite 205, Quincy, MA 02169, and having a listed registered agent of Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

## JURISDICTION AND VENUE

3. This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) on the grounds that this action arises under the Patent Laws of the

United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285.

4. This Court has personal jurisdiction over Defendant on the grounds that Defendant is an entity formed and existing under the laws of the State of Delaware. Further, Defendant has minimum contacts with the State of Delaware, and Defendant has purposefully availed itself of the privileges of conducting business in the State of Delaware, including, on information and belief, through the sale and offer for sale of products accused of infringement in this action throughout the State of Delaware and this Judicial District.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b) on the grounds that Defendant resides in this Judicial District because it is an entity formed and existing under the laws of the State of Delaware.

## FACTUAL BACKGROUND

6. Plaintiff is the owner by assignment of all right, title and interest in and to United States Patent Number 6,788,882 B1, entitled "Systems and Methods for Storing a Plurality of Video Streams on Re-Writable Random-Access Media and Time -and Channel-Based Retrieval Thereof" ("the '882 Patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the United States Patent and Trademark Office ("USPTO").

7. A true and correct copy of the '882 Patent is attached hereto as Exhibit A.

8. The application that became the '882 Patent was filed on April 17, 1998, and was assigned U.S. patent application number 09/062,022 ("the '022 Application").

9. The ’882 Patent issued on September 7, 2004, after a full and fair examination by the United States Patent Office.

10. The ’882 Patent is valid and enforceable.

## SUBJECT MATTER OF THE ’882 PATENT

11. The ’882 Patent recognized that, by the time the ’022 Application was filed in 1998, television viewers wanted to have greater control over their viewing experience: “As viewer habits change and the choice of programming (channels) grows, people want to adapt television programming to their schedule, rather than the other way around.” [’882 Patent 1:20-23].

12. Moreover, by the time the ’022 Application was filed in 1998, viewers had grown accustomed to the capability of VCRs to record a program for later viewing. However, VCRs offered limited flexibility in how a user could record programs, advance forward or backward within a program, and “surf” between programs:

> The VCR, although extremely successful as a consumer device, has limited flexibility when the number of television channels increases. Also, the consumer has to remember to program the VCR to record the event. Commercially-available VCR+® technology has somewhat facilitated the process, but still requires tape management, scheduling and remembering when and what to program.
>
> One frequently employed method of viewing television involves rapidly browsing (“surfing”) television channels to search for a program of interest, to watch several programs at once, or to skip ubiquitous commercials. Surfing has become even more popular given the advent of cable and satellite television, wherein many dozens of channels are available for viewing at any given time. On currently available single-screen systems, surfing must be done in real time and as time progresses. In other words, a user can watch one channel and record another channel on a VCR, but the user cannot watch a recorded program and simultaneously record another (unless the user is endowed with multiple VCRs).

[’882 Patent at 1:24-48].

13. The ’882 Patent recognized that these problems required a technical solution:

> Therefore, what is needed in the art is a fundamental increase in the flexibility afforded a user in viewing programs aired over multiple channels. Moreover, what is needed in the art is a way of harnessing the power of digital computers to give the user more power in determining what he wants to watch,” in order to provide “a fundamental increase in the flexibility afforded a user in viewing programs aired over multiple channels.

[’882 Patent at 1:54-60].

14. The ’882 Patent provides technical solutions to these and other deficiencies in the prior art: “To address the above-discussed deficiencies of the prior art, the present invention provides a digital video recorder (DVR) and a method of operating the same.” [’882 Patent at 1:63-65.]

15. For example, the ’882 Patent addresses one deficiency in the art by providing that:

> In one embodiment, the DVR includes: (1) a mass data storage unit that concurrently and continuously receives and digitally stores a plurality of channels and (2) a channel viewer, coupled to the mass data storage unit, that retrieves a portion of one of the plurality of channels from the mass data storage unit based on a received command and presents the portion on a video display device.

[’882 Patent at 1:65-2:5.]

16. As the ’882 Patent explains, this addresses a deficiency in VCR technology:

> The digital video recorder of the present invention remedies the shortcomings of traditional video recording methods. The DVR does this by combining an essentially limitless (only limited by the cost of the equipment) capability concurrently to record a number of channels on a random-access medium while being able concurrently to play back any of these channels for viewing.

[’882 Patent at 2:9-16.]

17. The specification identifies other technological deficiencies addressed by the subject matter disclosed and claimed in the ’882 Patent. For example, “In one embodiment of the present invention, the mass data storage unit stores the plurality of channels together with

time information to allow the plurality of channels to be synchronized with respect to one another." ['882 Patent at 2:63-66.]

18. The independent claims of the '882 Patent likewise address these technological deficiencies of the prior art.

19. Claim 1 of the '882 Patent claims:

> 1. A digital video recorder (DVR) for recording a plurality of television broadcast programs, comprising:
>
> a mass data storage unit that concurrently and continuously receives and digitally stores a plurality of television broadcast programs together with time information to allow said plurality of stored television broadcast programs to be synchronized with respect to one another; and
>
> a channel viewer, coupled to said mass storage unit, that retrieves a portion of one of said plurality of stored television broadcast programs from said mass data storage unit based on a received command and presents said portion on a video display device.

20. Claim 19 claims:

> 19. A method of operating a digital video recorder, comprising the steps of:
> receiving a plurality of television broadcasts, each television broadcast including a video signal; and
>
> concurrently and continuously digitally storing said plurality of television broadcasts on a mass data storage unit and storing said plurality of television broadcasts together with time information to allow said plurality of stored television broadcasts to be synchronized with respect to one another upon replay of said stored television broadcasts.

21. The subject matter disclosed and claimed in the '882 Patent provides solutions to other deficiencies in the art, as well.

22. For example, the '882 Patent discloses that in one embodiment, "the mass data storage unit stores the plurality of channels on a first-in first-out basis." '882 Patent at 2:44-45. This addresses a technological limitation regarding the volume of content that can be stored. Claim 2 of the '882 Patent also addresses this deficiency in the prior art.

23. In another example, the ’882 Patent discloses that “[i]n one embodiment of the present invention, the mass data storage unit stores the plurality of channels in separate files based on channel and timeslot identification.” [’882 Patent at 2:53-55.] This addresses a technological limitation of prior-art VCR technology regarding tape management and accessing recorded content. Claim 3 of the ’882 Patent addresses this deficiency in the prior art.

24. In yet another example, the ’882 Patent discloses that “[i]n one embodiment of the present invention, the channel viewer comprises a channel guide database containing pointers to locations in the mass data storage unit.” The ’882 Patent states that this “allows individual programs to be selected efficiently.” [’882 Patent at 3:9-10.]

25. Similarly, the ’882 Patent states that “[i]n a more specific embodiment, the channel guide contains links to locations in the mass data storage unit. The links may be hypertext links, wherein a user can initiate a retrieval and presentation of a particular portion of a selected channel simply by clicking on a particular location in the channel guide.” [’882 Patent at 3:5-8, 14-19.]

26. Various claims of the ’882 Patent address this deficiency in the prior art regarding the efficiency of selecting programs, including programs being stored on the DVR (e.g., claims 5, 7, 20, and 22).

27. The subject matter disclosed in the ’882 Patent also addresses the deficiency in prior-art technology relating to advancing or rewinding through programs. For example, the ’882 Patent describes harnessing the power of digital computers to provide the user more flexibility in advancing through programs:

> In one embodiment of the present invention, the channel viewer presents the portion nonlinearly. Sections of the portion may therefore be skipped, repeated,

> reversed, randomized or presented at a rate that differs from real-time. In an embodiment to be illustrated and described, commercials or other tedious content may be skipped to advantage. This gives rise to viewing concepts, such as "catch-up viewing" as described hereinafter.

'882 Patent at 3:31-38.

28. The '882 Patent further discloses that "[i]n one embodiment of the present invention, the DVR selectively moves by one commercial time unit (CTU) within the one of the plurality of channels in response to the received command. The DVR can move forward or backward. In a more specific embodiment, the received command is employable to achieve catch-up viewing." ['882 Patent at 4:16-21.]

29. These technological improvements to the prior art providing greater flexibility in advancing through a television program are reflected in various claims of the '882 Patent, including claims 9, 17, 18, 24, 32, and 33.

30. The subject matter disclosed in the '882 Patent also addresses a technological limitation relating to the volume of content that may be stored on a DVR. For example, the '882 Patent discloses that "[i]n one embodiment of the present invention, the mass data storage unit receives, digitally compresses and digitally stores the plurality of channels." ['882 Patent at 3:39-43.] This technological problem with the prior art is also addressed in the claims of the '882 Patent, including claims 10 and 25.

31. Plaintiff notified Defendant of the '882 Patent and Defendant's infringement of the '882 Patent prior to filing this action, but Defendant has not yet responded.

## COUNT I – DIRECT PATENT INFRINGEMENT

32. Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

33. Defendant has directly infringed the ’882 Patent in violation of 35 U.S.C. § 271(a) by making, importing, using, selling, or offering for sale in the United States products that embody the patented invention, including at least claims 1, 2, 5-9, 12, 13, 16-24, 27, 28, and 31-33.

34. Defendant’s infringing Accused Products include, without limitation, its TiVo T6 DVR and TiVo service, and other as-yet-unknown products that satisfy each element of one or more asserted claims.

35. The Accused Products satisfy each and every element of each asserted claim of the ’882 Patent, as detailed in the preliminary claim chart attached hereto as Exhibit B, and incorporated herein by reference, either literally or under the doctrine of equivalents.

36. Defendant conditions the receipt of benefits from using the Accused Products for which its customers have paid upon the use of the DVR recited in claims 1, 2, 5-9, 12, 13, and 16-18, as well as performance of the steps of the methods recited in at least claims 19-24, 27, 28, and 31-33 of the ’882 Patent.

37. For example, Defendant not only instructs its customers to use the Accused Products in an infringing manner, but if its customers want to obtain the benefits of the Accused Products for which they are paying, they must necessarily operate the Accused Products in an infringing manner due to the design of the Accused Products.

38. Therefore, the acts of Defendant’s customers in using the DVR recited in claims 1, 2, 5-9, 12, 13, and 16-18, as well as in performing the steps of at least method claims 19-24, 27, 28, and 31-33 of the ’882 Patent, are attributable to Defendant.

39. Defendant's infringing activities are and have been without authority or license under the '882 Patent.

40. Defendant has had actual knowledge of the '882 Patent and Plaintiff's claims of infringement prior to the filing of this action, at least since receiving pre-suit notice of the '882 Patent from Plaintiff.

41. Defendant's infringement of the '882 Patent has been willful and deliberate. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT II – INDUCED PATENT INFRINGEMENT

42. Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

43. Defendant has actively and intentionally, with prior knowledge of the '882 Patent and Plaintiff's claims of infringement, induced the direct infringement by others of at least claims 1, 2, 5-9, 12, 13, 16-24, 27, 28, and 31-33 of the '882 Patent in violation of 35 U.S.C. § 271(b), in making, importing, using, selling, or offering for sale in the United States Accused Products that embody the patented invention as described in Count I, above.

44. Furthermore, as detailed in Exhibit B, Defendant has instructed its customers to use the Accused Products in an infringing manner.

## JURY DEMAND

45. Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

A. An adjudication that one or more claims of the '882 patent have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

B. An accounting and an award to Plaintiff of damages adequate to compensate Plaintiff for the Defendant's acts of infringement, together with pre-judgment and post-judgment interest and costs pursuant to 35 U.S.C. § 284;

C. That Defendant's infringement be found to be willful, and that the Court award enhanced damages pursuant to 35 U.S.C. § 284;

D. That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and expenses in accordance with 35 U.S.C. § 285; and

E. Any further relief that this Court deems just and proper.

This 14th day of May, 2018.

STAMOULIS & WEINBLATT LLC

*/s/Stamatios Stamoulis*
Stamatios Stamoulis #4606
Richard C. Weinblatt #5080
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540
Facsimile: (302) 762-1688
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*Of Counsel:*

Daniel A. Kent
dankent@kentrisley.com
Tel: (404) 585-4214
Fax: (404) 829-2412
Stephen R. Risley
steverisley@kentrisley.com
Tel: (404) 585-2101
Fax: (404) 389-9402
Cortney S. Alexander
cortneyalexander@kentrisley.com
Tel: (404) 855-3867
Fax: (770) 462-3299
KENT & RISLEY LLC
5755 N Point Pkwy Ste 57
Alpharetta, GA 30022

Attorneys for Plaintiff